IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


CHARLES TARVER,
      Petitioner,

vs.                                  Case No.:  5:10cv87/RS/EMT

KENNETH S. TUCKER,[1]
      Respondent.
_____/

### ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 20, 21).  Petitioner filed a reply (doc. 24).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 20, 21).[2]  Petitioner was charged in the Circuit Court in and for Jackson

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 20, 21).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

County, Florida, Case No. 2005-CF-325, with one count of carjacking with a firearm (Count 1), one count of fleeing or attempting to elude (high speed reckless) (Count 2), and one count of robbery with a firearm (Count 3) (Ex. A at 1).  The offense conduct occurred on June 7, 2005 (*id.*). Following a jury trial, Petitioner was found guilty of robbery without a firearm (a lesser included offense of carjacking), fleeing or attempting to elude (high speed reckless), and grand theft without a firearm (a lesser included offense of armed robbery) (*see* Ex. A at 23, Ex. B).  On October 18, 2005, Petitioner was adjudicated guilty and sentenced to fifteen (15) years of imprisonment on Count 1, a concurrent term of five (5) years of imprisonment Count 3, and a term of fifteen (15) years of imprisonment on Count 2, to run consecutively to the sentences on Counts 1 and 3, with pre-sentence credit of 312 days (Ex. A at 24–32, 42–48).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-5226 (Ex. C).  The First DCA affirmed the judgment per curiam without written opinion on September 27, 2006, with the mandate issuing October 13, 2006 (Ex. E).  Tarver v. State, 939 So. 2d 98 (Fla. 1st DCA 2006) (Table).  Petitioner did not seek further review.

On December 6, 2006, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F at 1–11).  The state circuit court appointed counsel for Petitioner and held an evidentiary hearing on Petitioner's claims (*id.* at 27, 32–173).  The state circuit court denied the Rule 3.850 motion (*id.* at 174–79).  Petitioner appealed the decision to the First DCA, Case No. 1D08-5584 (Ex. I).  The First DCA affirmed the decision per curiam without written opinion on January 29, 2010, with the mandate issuing March 22, 2010 (Exs. J, K). Tarver v. State, 29 So. 3d 1124 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on April 20, 2010 (doc. 1).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.

In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams

v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]   The appropriate test was

described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.     PETITIONER'S CLAIMS

A.     Ground One:  "Petitioner was denied his 6th and 14th Amendment rights under the U.S. Constitution to due process and effective assistance of counsel when counsel failed to properly move for judgment of acquittal."

Petitioner contends defense counsel performed ineffectively by making a "boilerplate" motion for judgment of acquittal ("JOA") on the carjacking count (doc. 1 at 3). He contends counsel should have argued that the State failed to present a prima facie case of either carjacking or the lesser included offense of robbery with regard to his stealing the victim's car (*id.* at 3–4). Petitioner states the State failed to present competent substantial evidence that Petitioner deprived the victim of his car by "use of force, violence, assault, or putting in fear" as required by the carjacking and robbery statutes (*id.* at 4). He asserts the victim abandoned the car by jumping out of it and running away, and only then did he form an intent to steal the car (*id.*). Petitioner contends if counsel had argued there was no evidence of use of force, violence, assault, or putting in fear, there is a reasonable probability the jury would convicted him of only grand theft (*id.*). Petitioner states he raised this claim on direct appeal of his conviction (*id.*).

Respondent contends Petitioner presented the state courts with a claim that trial counsel was ineffective for failing to properly move for a JOA, but he argued only that counsel should have moved for a JOA on double jeopardy grounds, not on the ground that counsel should have presented a better argument regarding the sufficiency of the evidence to support the carjacking charge (doc. 20 at 13). Therefore, Ground One was not exhausted and is procedurally barred (*id.*). Respondent contends notwithstanding the procedural bar, the claim is without merit (*id.* at 13–14).

The state court record demonstrates that Petitioner exhausted his claim by raising it on direct appeal of his conviction (Ex. C). In its answer brief, the State asserted a procedural defense and alternatively addressed the merits (Ex. D). The First DCA affirmed the judgment of conviction without a written explanation for its decision (Ex. E). Although the state court did not explain its decision, its rejection of Petitioner's claim constituted an adjudication "on the merits," because the court did not clearly state that its rejection of Petitioner's claim was based solely on a state procedural rule. *See* Harrington, 131 S. Ct. at 784–85. Therefore, the decision is entitled to deference unless Petitioner establishes that the state court state court's rejection of the claim was contrary to or an unreasonable application of clearly established federal law.

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must

show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some

conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693).

However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not,

or prove by a preponderance of evidence," that counsel's errors affected the outcome.  <u>Strickland</u>,

466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state

court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the

evidence.  <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular

decisionmaker," as the court should presume that the judge or jury acted according to law.

<u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt."  *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt

stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial,

not on appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S.

at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of

historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption

of correctness, while the performance and prejudice components are mixed questions of law and

fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

2. Federal Review of State Court Decision

As previously discussed, Petitioner raised this claim on direct appeal of his conviction (Ex.

C).  The First DCA affirmed the judgment of conviction and sentence without written opinion (Ex.

E).

 A state court decision is "contrary to" federal law "if the state court arrives at a conclusion

opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a

case differently than [the Supreme Court] has on a set of materially indistinguishable facts."

Williams, 529 U.S. 362, 412–13.  Under this prong, the state court need not cite federal law "so long as neither the reasoning nor the result of the state-court decision contradicts" the Supreme Court's precedents.  *See* Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (per curiam).  Further, the difference between the state court's decision and the Supreme Court precedent must be more than slight; the state court decision must be "substantially different."  *See* Williams, 529 U.S. at 405.

The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In the instant case, Petitioner failed to demonstrate he is entitled to relief under § 2254(d).  Both Petitioner and the State cited the Strickland standard as the applicable standard in their briefs to the First DCA (Exs. C, D).  The First DCA's rejection of Petitioner's claim could have been supported by the argument that Petitioner failed to show that the trial court would have properly granted the motion for JOA had counsel made the arguments Petitioner faults her for not making.  At the close of the State's case, Petitioner's trial counsel moved for dismissal of all charges on the ground that the State failed to present a prima facie case on each charge (Ex. B at 115).  The trial court denied the motion (*id.*).

Under Florida law, an appellate court will not reverse a conviction which is supported by competent, substantial evidence.  *See* Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002) (citations omitted).  If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.  *See id.* (citation omitted).  However, if the State's evidence is wholly

circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence.  *See id.* (citation omitted).  Because the evidence in this case was both direct and circumstantial, the appellate court was not required to apply the special standard of review applicable to circumstantial evidence cases.  *See id.* (citation omitted).

To prove the crime of carjacking, the State was required to prove the following three elements beyond a reasonable doubt:  (1) Petitioner took the motor vehicle from the person or custody of Mr. Godwin, the victim; (2) force, violence, assault, or putting in fear was used in the course of the taking; and (3) the taking was with the intent to temporarily or permanently deprive Mr. Godwin of his right to the motor vehicle or any benefit from it.  *See* Fla. Stat. § 812.133; The Florida Bar, Florida Standard Jury Instructions in Criminal Cases, Part Two:  Instructions on Crimes, Chp. 15, § 15.2, Carjacking (2002).  To prove the lesser included offense of robbery, the State was required to prove the following four elements beyond a reasonable doubt:  (1) Petitioner took Mr. Godwin's vehicle; (2) force, violence, assault, or putting in fear was used in the course of the taking; (3) the vehicle was of some value; and (4) the taking was with the intent to temporarily or permanently deprive Mr. Godwin of his right to the vehicle or any benefit from it.  *See* Fla. Stat. § 812.13; The Florida Bar, Florida Standard Jury Instructions in Criminal Cases, Part Two: Instructions on Crimes, Chp. 15, § 15.1, Robbery  (2002).  "In the course of the taking" means that the act occurred before, during, or after the taking of the motor vehicle and that the act and the taking of the motor vehicle constitute a continuous series of acts or events.  *See* Florida Standard Jury Instructions §§ 15.1, 15.2.  The taking must be by the use of force or violence or by assault so as to overcome the resistance of the victim, or by putting the victim in fear so that the victim does not resist.  *Id.*  The law does not require that the victim of carjacking resist to any particular extent or that the victim offer any actual physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does resist.  *id.*  But unless prevented by fear, there must be some resistance to make the taking one done by force or violence.  *Id.*

Auburn Godwin testified that on June 7, 2005, he was sitting in his four-door car in the parking lot of an apartment complex talking to Equilla Brown, when Petitioner asked him for a ride to the gate of the complex (Ex. B at 23–24, 31).  Mr. Godwin testified Petitioner had been to his

(Godwin's) house once with Darryl Powell, Petitioner's uncle, but he (Godwin) did not know Petitioner by name (*id.* at 25).  Mr. Godwin testified Petitioner sat in the front seat of the car, and Ms. Brown sat in the back (*id.*).  Mr. Godwin drove to the gate of the apartment complex, and Petitioner said he would get out of the car there (*id.* at 26).  Ms. Brown exited the back seat and waited for Petitioner to exit (*id.*).  Petitioner then drew a pistol to Mr. Godwin's head and said, "Give me the f*** what you got" (*id.* at 26–28).  Petitioner then reached into Mr. Godwin's pockets and said, "Now drive me the f*** out of these projects." (*id.*).  Mr. Godwin testified he accelerated, and upon his car's hitting a high speed bump, he (Godwin) jumped out of the car and "was running for [his] life" (*id.* at 28–29).  Mr. Godwin testified Petitioner took $500.00 from his wallet (*id.* at 28).

Equilla Brown testified Mr. Godwin agreed to drive her somewhere, and she overheard Petitioner ask Godwin to take him somewhere as well (Ex. B at 37–38).  Ms. Brown testified she sat in the back seat of Mr. Godwin's car, and Petitioner sat in the passenger's seat (*id.* at 38).  She testified Petitioner asked her to step out of the car, so she did (*id.*).  She testified she then saw Mr. Godwin jump out of the car and run, and Petitioner exited the passenger's side holding a gun and walked around the car to get in the driver's side (*id.* at 38–40).

Law enforcement officers testified they apprehended Petitioner after he led them on a high speed chase in Mr. Godwin's vehicle (Ex. B at 45–63, 78–88).  Petitioner had $369.49 on his person when he was arrested (*id.* at 90).  Officers found an empty wallet on the floorboard of the car (*id.*).  The next day, officers retraced the route of the chase, and recovered a small caliber silver handgun laying in foliage near a curb (*id.* at 65–69, 91–93).  Mr. Godwin identified the gun as the one that Petitioner pointed in his face (*id.* at 26–27).

Mr. Godwin's testimony that Petitioner pointed a gun at him, stated "Give me the f*** what you got," then reached into Mr. Godwin's pockets and said "Now drive me the f*** out of these projects" was competent, substantial evidence from which  a rational trier of fact could find that Petitioner's taking of Mr. Godwin's vehicle was by putting Mr. Godwin in fear so that he did not physically resist and instead fled the vehicle.  Further, the fact that Petitioner did not drive away in Mr. Godwin's car until after Mr. Godwin jumped out did not negate the evidence suggesting Petitioner formed an intent to steal the car while Mr. Godwin was still in it.  In light of the evidence,

Petitioner failed to show a reasonable probability the trial court would have property granted a motion for JOA on the carjacking count if counsel had argued there was no evidence of use of force, violence, assault, or putting in fear. *See* Sweat v. State, 895 So. 2d 462 (Fla. 5th DCA 2005); Williams v. State, 863 So. 2d 1257 (Fla. 4th DCA 2004); Ponds v. State, 693 So. 2d 685 (Fla. 5th DCA 1997). Therefore, Petitioner failed to demonstrate that the state court's denial of this claim was contrary to or an unreasonable application of Strickland.

> B.    Ground Two: "Petitioner was denied his 6th and 14th Amendment rights under the U.S. Constitution to due process and effective assistance of counsel when counsel failed to call a witness to support Petitioner's defense."

In Ground Two, Petitioner states he testified at trial that Mr. Daryl Powell introduced him to the victim, Mr. Godwin (doc. 1 at 4). Petitioner asserts he and Mr. Godwin became involved in a sexual relationship while Petitioner was visiting from New Jersey, and Godwin became angry when Petitioner told him he was returning to New Jersey on June 8, 2005 (*id.*). Petitioner alleges Mr. Godwin stated, "If I can't have you, no one else would" (*id.*). Petitioner asserts Mr. Godwin falsely testified he barely knew Petitioner (*id.*). He contends if defense counsel had presented testimony from Mr. Powell, Powell would have corroborated Petitioner's testimony and refuted Godwin's testimony by testifying Petitioner and Mr. Godwin knew each other very well and appeared to be close friends (*id.* at 5). Petitioner contends there is a reasonably probability he would have been acquitted if counsel had presented Mr. Powell's testimony (*id.*). Petitioner states he raised this claim in his Rule 3.850 motion (*id.*).

Respondent asserts Petitioner failed to properly exhaust this claim (doc. 20 at 14). Respondent states Petitioner raised this claim in his rule 3.850 motion but abandoned it on appeal (*id.*). Therefore, the claim is procedurally barred from federal review (*id.*).

The record demonstrates Petitioner raised this claim as Ground Two in his Rule 3.850 motion (Ex. F at 3–5). Additionally, he fully briefed this issue on appeal of the circuit court's denial of the motion; indeed it was the only issue Petitioner briefed (Ex. I). Therefore, Petitioner properly exhausted the claim in the state courts.

> 1.    Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

> 2.      Federal Review of State Court Decision

The state circuit court adjudicated Petitioner's claim as follows:

> In claim two, Defendant alleges that his counsel was ineffective when she failed to call Daryl [sic] Powell as a witness at trial.  Defendant claims that this witness would have bolstered his version that the victim, Auburn Godwin, knew the Defendant.  Furthermore, Defendant submits that the witness would have attacked the credibility of the victim, who stated that he barely knew the Defendant let alone had a relationship with him.  Finally, Defendant asserts that this witness would have cast doubt on the State's closing argument that there was no evidence to support a lover's quarrel as alleged by the defense.
>
> In order to state a facially sufficient claim on this ground, the movant must allege the identity of the potential witness, the substance of the witness's testimony, an explanation of how the omission of the testimony prejudiced the outcome of the case, and a representation that the witness was available for trial.  *See Leftwich v. State*, 954 So. 2d 714 (Fla. 1st DCA 2007).  This Court finds that the Defendant has failed to present a facially sufficient claim under *Nelson v. State*, 875 So. 2d 579 (Fla. 2004).
>
> At the evidentiary hearing, Defendant's trial counsel testified that she did depose Daryl [sic] Powell on August 11, 2005.  However, when she attempted to serve a subpoena on Daryl [sic] Powell for trial, the Sheriff's office was unable to locate and serve him.  Furthermore, Defendant's trial counsel testified that she made a strategic and/or tactical decision by not calling any other witnesses.  According to Mrs. Simpson, she felt that it was important to not lose last word during closing arguments and rebut the State's case to the jury.  For clarification purposes, this trial was commenced under the old rule that permitted the defense to have last say in closing arguments if they did not present any witnesses other than the Defendant.
>
> Absent extraordinary circumstances, strategic or tactical decisions by trial counsel are not grounds for ineffective assistance of counsel claims.  *See Occhicone v. State*, 768 So. 2d 1037 (Fla. 2000).  This Court finds that Defendant's counsel did depose this witness; however she was unable to serve him a subpoena for trial.  Furthermore, counsel testified that she made a tactical decision not to call any witness including Powell to preserve rebuttal closing argument.  Beyond this Court's finding of a tactical legal strategy, Defendant cannot overcome either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Where an uncalled witness could have been significantly impeached through contradictory evidence a court will not label counsel ineffective for failing to call that witness.  *See Kenon v. State*, 855 So. 2d 654 (Fla. 1st DCA 2003).  The evidence against the Defendant was not tentative, weak, or circumstantial.  At trial, the victim, Auburn Godwin, and another eyewitness, Equilla Brown, identified the Defendant as the individual who stole the

victim's car at gun point and obtained money via two separate and distinct criminal
acts. *See Trial TR., pgs. 29–30, 40–41*.  Furthermore, two Marianna Police Officers,
Steven Stewart and Matthew Vickery, identified the Defendant as the individual they
pursued and captured in a high speed chase with the victim's car in his possession
after the first two crimes were committed. *See Trial TR., pgs. 69 and 94*.  Therefore,
Defendant's claim is denied.

(Ex. F at 175–76).

As previously discussed, Petitioner appealed the circuit court's decision to the First DCA
(Ex. I).  The First DCA affirmed without a written decision (Ex. J).

"The question of whether an attorney's actions were actually the product of a tactical or
strategic decision is an issue of fact, and a state court's decision concerning that issue is
presumptively correct." Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).  However,
"the question of whether the strategic or tactical decision is reasonable enough to fall within the
wide range of professional competence is an issue of law not one of fact." *Id.*  When considering
the legal question of the reasonableness of counsel's decision, the court is mindful that the Supreme
Court has described strategic decisions of counsel as "virtually unchallengeable." Strickland, 466
U.S. at 690.

Petitioner has not proffered any evidence to rebut the state court's factual finding that Ms.
Simpson's failure to present Mr. Powell's testimony was a tactical decision.  Further, the finding is
well-supported by the record.  At the post-conviction evidentiary hearing, Ms. Simpson testified she
deposed Mr. Powell and interviewed him privately (Ex. F at 112–29).  Ms. Simpson testified she
subpoenaed Mr. Powell for trial, but the process server could not locate him at the address and
telephone number he provided Ms. Simpson (*id.* at 112, 123).  She additionally testified she chose
not to present evidence other than Petitioner's testimony, because she wanted to preserve the
advantage of first and last closing argument:

> Q [by the State].  . . . And just for the record, just so the appellate courts
> understand, prior to when they passed the statute where prosecution gets the first
> closing and the rebuttal, the old rule used to be that if the defense introduced any
> evidence other than the defendant's testimony, then the defense would lose—they
> normally would get first opening [sic] and rebuttal—but they would lose that
> privilege and the State would get it.  Is that correct?
>
> A [by Ms. Simpson].  That's correct.

Q.  So, a lot of times, did it play into your strategy to maybe not put in evidence physical evidence or other witness testimony, that you could get in through the defendant to keep from losing that first and second closing?

A.  That's true.  That's part of what the strategy was back before they changed the rules.

Q.  Any why would that be to your strategic advantage as a defense attorney to have that first opening [sic] and that, and that last word there at the end?

A.  A lot of times, when you're doing the closing arguments and you get up first and the person has to go in the middle, they're sort of sandwiched in, and I get the last word.  I'm able to then rebut some of the things, as the case would be, the state attorney brings up.  And that's, a lot of times, real helpful, I think, with a jury, especially these type of cases where there was some wiggle room, you know, based on what my client had testified to and based on the inconsistent statement of the actual victim in this case.  And I think I even had an officer help in this case.  So, in this case, we had a lot of wiggle room that I could bring stuff out at the very end.

Q.  Right, without having to call extra witnesses or put in extra testimony?

A.  That's correct.

Q.  I mean, we can—the old adage I always heard, you can talk about, talk about [sic] the Titanic without having to introduce the Titanic.  Is that basically your theory?

A.  Something like that, yes.

(Ex. F at 81–82).

Mr. Powell's deposition was admitted into evidence at the post-conviction evidentiary hearing (*see* Ex. F at 194–95).  In his deposition, he testified Petitioner and Mr. Godwin were close friends, and Petitioner told him he spent time at Mr. Godwin's house (*id.* at 198–90).  Powell testified Petitioner and Mr. Godwin sniffed cocaine together, and Mr. Godwin bought Petitioner gifts, for example, clothing (*id.* at 193).  Mr. Powell testified Petitioner's girlfriend in New Jersey was pregnant, and she sent Petitioner a bus ticket to return to New Jersey (*id.* at 190–91).

Petitioner's defense to the carjacking and robbery charges was that he and Mr. Godwin were having a homosexual relationship, Mr. Godwin gave Petitioner permission to take his car, and Mr. Godwin was angry that Petitioner was returning to New Jersey (Ex. B at 19–20, 175–78, 182).

Petitioner testified he and Mr. Godwin were dating and had a sexual relationship (*id.* at 135). He testified he had a bus ticket to return to New Jersey on June 8, 2005, the day after the crimes occurred (*id.* at 136). He testified on the night of the crimes, he, Mr. Godwin, and another gay male friend were drinking and "having a little sexual . . . party" at Mr. Godwin's house and then decided to go to Garden Apartments to "do some transactions" (*id.* at 136–37). Petitioner testified when they arrived at the apartment complex in Mr. Godwin's car, Mr. Godwin told Petitioner to take the car for awhile so he could engage in a transaction (*id.*). Petitioner testified he left with Godwin's car (*id.* at 137). Petitioner testified that Equilla Brown was not present that evening (*id.* at 138). He also testified that Mr. Godwin's gun was in the car, and he (Petitioner) threw it out of the car while the police were chasing him, because both he and Mr. Godwin were convicted felons (*id.* at 138–39). Petitioner testified he did not rob Mr. Godwin of money, and the money that police discovered on his person was his own (*id.* at 140–42). Petitioner testified Mr. Godwin was upset that Petitioner was leaving for New Jersey, and said that if he could not have Petitioner, nobody could (*id.* at 142). Petitioner testified he did not consider that "he [Godwin] was going to do this to me" (*id.*).

At the time of Petitioner's trial, September 30, 2005, Florida law created a procedural advantage for defendants who limited the presentation of evidence to only their own testimony. *See* Fla. R. Crim. P. 3.250 (2004); *see also* In re Amend. to Fla. Rules of Crim. P., 957 So. 2d 1154, 1167 (Fla. 2007). If, and only if, the defense limited its case in that way, it was permitted to give both the first and last closing argument. *Id.* The Florida Supreme Court recognized the "primacy and recency effect" of giving the last closing argument, and has repeatedly held that it was reasonable for defense counsel to consider that effect when formulating trial strategy. *See, e.g.*, Bealey v. State, 18 So. 3d 473, 491–92 (Fla. 2009).

In the instant case, there is no evidence suggesting Mr. Powell was available for trial. Furthermore, it would have been reasonable trial strategy to forgo presenting Mr. Powell's testimony in order to gain the advantage of last closing argument. Mr. Powell's testimony was of minimal value to the defense. Powell would not have provided any factual information to the jury beyond what Petitioner provided or could have provided in his own testimony. Further, although Powell would have corroborated Petitioner's testimony that Petitioner and Mr. Godwin were close friends and rebutted Mr. Godwin's testimony that he hardly knew Petitioner, Powell could not have

corroborated Petitioner's description of the events that unfolded on June 7, nor could he have impeached Mr. Godwin's version of the events.  Further, Mr. Powell would not have provided any relevant testimony to corroborate Petitioner's suggestion that Mr. Godwin was motivated by anger to fabricate the carjacking and robbery charges.  Considering these factors, Ms. Simpson's decision to forgo presentation of Mr. Powell's testimony to preserve the right to first and last closing argument was reasonable enough to fall within the wide range of professional competence.  Therefore, Petitioner failed to demonstrate that the state court's adjudication of this claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.

IV.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Edwin G. Buss as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 9<u>th</u> day of May 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**